**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-CV-22736-TORRES

MICHAEL FIORITO,
and all others similarly situated,

*Plaintiffs.*

v.

DAVANNIS, INC., *et al,*

*Defendants.*
______________________________________/

***ORDER ON MOTIONS TO DISMISS***

Before the Court are two motions to dismiss. Defendants, HRM, L.L.C. d/b/a Woollsey's Restaurant ("Woollsey's") and Jordan Tap Room ("Jordan Tap Room") together submitted the first motion ("Motion 1"), and Davanni's, Inc. ("Davanni's") alone submitted the second motion ("Motion 2" and together with Motion 1 ("the Motions")). They moved to dismiss the case for lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction, and failure to state a claim under Federal Rule of Civil Procedure 12(b); improper joinder of Defendants under Federal Rule of Civil Procedure 20(a)(2); failure to exhaust administrative remedies for FCRA; and failure to assert claims for MHRA. [D.E. 20]; [D.E. 22]. Plaintiff has responded to the Motion, [D.E. 23], to which Defendants have replied, [D.E. 30]. Having reviewed the record, the Court concludes that we cannot exercise personal jurisdiction over Defendants, and the venue in our district is improper. Therefore, Defendants'

Motions should be granted.

## *I. BACKGROUND*

Plaintiff, a Minnesota resident, suffers from a visual impairment and a serious long-term traumatic brain injury, rendering him disabled under the ADA, 42 U.S.C. 12102. [D.E. 1 at ¶¶ 19–20]. When Plaintiff attempted to access Defendants' websites, including in 2024, Plaintiff found that the websites contained digital barriers that prevented him, as a screen-reader user, from fully and equally accessing the content. [*Id*. at ¶ 26]. Plaintiff further alleges that the websites' visual cues does not make information accessible to screen-reader users; that the websites fail to provide adequate text equivalents for non-text images, preventing blind users from understanding pictures, illustrations, and charts; and that the websites' links and buttons do not clearly identify their functions, forcing screen-reader users to navigate the websites through a process of trial and error. [*Id*.]. All three Defendants retained a Florida company, DreamBig, to design their websites in 2020 and 2021. [D.E. 20-1 at ¶ 11]; [D.E. 20-2 at ¶ 11]; [D.E. 22-1 at ¶ 8]. Arguing that numerous other visually impaired consumers would likewise encounter barriers when attempting to browse, search, shop, or make purchases on Defendants' improperly maintained websites, Plaintiff, proceeding pro se, filed this putative class action against Defendants on six counts. [D.E. 1 at ¶¶ 27, 29].

- Count I: Violation of Title III of the ADA [*Id*. at ¶¶ 50–63].
- Count II: Violation of Florida Civil Rights Act [*Id*. at ¶ 65].
- Count III: Violation of Florida Accessible Electronic and Information Technology Act [*Id*.].
- Count VI: Violation of Florida Deceptive and Unfair Trade Practices Act [*Id*.].
- Count V: Violation of Minnesota Human Rights Act [*Id*. at ¶¶ 64–72].

- Count VI: Violation of the Rehabilitation Act of 1973 § 504 [*Id*. at 26–27].

Plaintiff additionally seeks an order certifying the proposed class, a declaratory judgment that Defendants violated the foregoing laws, and a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. §§ 363A.29 and 363A.33, and Fla. Stat. § 1.610, directing Defendants to take all reasonable steps necessary to ensure that the contents of their digital platforms are accessible to screen-reader users and that such users are afforded full, equal, and independent access. [*Id*. at 28].

## *II. ANALYSIS FOR PERSONAL JURISDICTION*

### *A. __Standard of Review__*

Under Federal Rule of Civil Procedure 12(b), a defendant may move to dismiss a plaintiff's claim when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Personal jurisdiction can take two forms: general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General personal jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) (holding that general personal jurisdiction arises out of a defendant's contact that is "unrelated to the cause of action being litigated"), while specific personal jurisdiction is founded on their activities in the forum that are related to the cause of action alleged in the complaint. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). Federal courts may exercise personal jurisdiction only if it (1) complies with the forum state's long-arm statute and (2) is

consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

### *B. General Personal Jurisdiction*

Defendants argue that they are not subject to general personal jurisdiction because they are neither incorporated nor principally operate outside Minnesota. [D.E. 20 at 5–7]; [D.E. 22 at 5–6].

#### *1. Florida's Long-Arm Statute*

A defendant is generally subject to general personal jurisdiction if he engages in "substantial and not isolated activity" within Florida. Fla. Stat. § 48.193(2). Florida courts consider several factors to determine whether a defendant's activities collectively show a general course of businesses in the state for monetary benefits, including "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 2018) (cleaned up) (quoting *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 555 (Fla. 2d DCA 2017)); *Day v. Datta*, 818 F. Supp. 3d 1394, 1403 (S.D. Fla. 2026) (citing *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th

Cir. 2005)) (adopting the same factors).

Here, Woollsey is a Minnesota limited liability company that maintains its sole business office and operates its only restaurant in Bloomington, Minnesota. [D.E. 20-1 at ¶¶ 2, 4]. Jordan Tap Room is also a Minnesota company with its business office in Jordan, Minnesota. [D.E. 20-2 at ¶ 2]. Davanni's is a company incorporated in Minnesota and has its principal place of business in St. Louis Park, Minnesota. [D.E. 22-1 at ¶ 3]. Woollsey's president, Jordan Tap Room's president, as well as Davanni's controller/IT director state in the affidavit/declaration that all these three companies (1) never maintain any office or property in Florida; (2) do not have a registered license to do business in Florida; and (3) deliver and serve people exclusively within Minnesota. [D.E. 20-1 at ¶¶ 3, 7–10]; [D.E. 20-2 at ¶¶ 3, 7–10]; [D.E. 22-1 at ¶¶ 4–5].

Although these four factors are not dispositive, they are highly relevant. *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167. Taken together, these facts do not support a finding that Defendants conduct general business in Florida. *Prunty*, 753 F. App'x at 735 (finding no general course of business activity under Florida's long-arm statute because the defendant's attorneys were not licensed to practice law in Florida, maintained no offices in the state, did not travel to Florida for business, and did not actively solicit Florida clients, despite sending electronic communications into the state). Defendants' affidavits and declaration are sufficient evidence to find no statutory general jurisdiction exists. *See, e.g., Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009), *certified question answered*, 39 So. 3d 1201 (Fla. 2010) (citing *Sculptchair*, 94 F.3d at 627) ("The defendant . . . must 'raise[], through

affidavits, documents or testimony, a meritorious challenge to personal jurisdiction.'"). Thus, Florida's long-arm statute § 48.193(2) is not satisfied.

### ***2. Due Process***

Even if we assume *arguendo* that Plaintiff could satisfy Florida's long-arm statute, the exercise of general personal jurisdiction would nevertheless fail to comport with the Due Process Clause of the Fourteenth Amendment. Whether due process is met depends on "the quality and nature of the activity in relation to the fair and orderly administration of the laws." *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447 (1952). A company is subject to general personal jurisdiction in its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014) (holding that there was no general personal jurisdiction over Daimler in California because Daimler was neither incorporated nor maintained its principal place of business there, notwithstanding the substantial sale of Mercedes-Benz vehicles throughout the state by its subsidiary).

In exceptional cases, a court may also exercise general personal jurisdiction over companies to hear claims when their contact with the forum state is so "continuous and systematic as to essentially render them at home." *Perkins*, 342 U.S. at 447 (finding general personal jurisdiction where, although the corporation was neither incorporated nor conducted mining operations in Ohio, its president relocated to Ohio during World War II and managed virtually all corporate affairs there by maintaining company records, managing bank accounts, handling correspondence, paying employees, holding directors' meetings, supervising corporate policies, and

directing the corporation's limited wartime operations, thereby rendering the corporation's contact with Ohio sufficiently substantial to make Ohio its temporary principal place of business); *Carmouche*, 789 F.3d at 1204 (determining that a corporation's operations in a forum other than its state of incorporation or principal place of business will render it "at home" only in the exceptional case where those operations are so substantial and of such a nature as to warrant general personal jurisdiction).

Here, none of Defendants have a place of incorporation or principal place of business in Florida. [D.E. 20-1 at ¶ 2]; [D.E. 20-2 at ¶ 2]; [D.E. 22-1 at ¶ 3]. Moreover, Defendants' affidavits and declaration establish that they maintain no offices or property in Florida, employ no personnel in the state, do not send employees there to conduct business, and maintain bank account records solely in Minnesota. [D.E. 20-1 ¶¶ 8–10]; [D.E. 20-2 ¶¶ 8–10]; [D.E. 22-1 ¶ 5]. Accordingly, this is not the exceptional case in which Defendants' affiliations with Florida are so continuous, systematic, and substantial as to render them essentially "at home". *See, e.g., Goodyear*, 564 U.S. at 921–22, 929 (finding no general personal jurisdiction because the defendants were not "at home" given that they were not registered to do business in North Carolina, maintained no offices, employees, or bank accounts there, did not design, manufacture, advertise, sell, ship, or solicit business in the state, and only a small percentage of their tires reached North Carolina through the distribution efforts of affiliated entities); *see also Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (holding that Union Carbide was not "at home" in Florida even

though it maintained a distributor and customers in the state, registered to do business, appointed a registered agent for service of process, built a manufacturing plant, and considered constructing a shipping terminal, because those contacts reflected only substantial business activity and did not render Florida a surrogate for its place of incorporation or principal place of business).

Moreover, although Defendants' websites can be accessed nationwide, including Florida, [D.E. 1 at ¶ 17]; [D.E 23 at ¶ 20], the mere accessibility of a website does not make a company "at home" in every state where the website can be viewed. *Shipping & Transit, LLC v. WOV, LLC*, No. 16-CV-80860, 2016 WL 5338078, at *3 (S.D. Fla. Sept. 23, 2016) (citing *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008)) (determining that a website that is generally available to customers nationwide, rather than specifically targeting the forum state, does not establish general personal jurisdiction because the mere ability of forum residents to access the website does not, standing alone, demonstrate continuous business activity). Because Plaintiff raises no evidence that Defendants' websites specifically target Florida, and where Defendants aver that only Minnesota residents may place online orders, [D.E. 20-1 at ¶ 7]; [D.E. 20-2 at ¶ 7]; [D.E. 22-1 at ¶ 4], the websites' nationwide accessibility does not establish general personal jurisdiction. *See, e.g., Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1301–02 (S.D. Fla. 2007) (holding that the defendant's website was "passive" and could not support general personal jurisdiction where Florida residents could not purchase products, enter into contracts, or otherwise transact business directly through the website, but instead were required

to place orders by telephone or in writing to the defendant's California office). Therefore, we cannot exercise general personal jurisdiction over Defendants.

### *C. Specific Personal Jurisdiction*

Plaintiff then argues that Defendants are subject to specific personal jurisdiction in Florida because (1) Defendants' websites are accessible in Florida; and (2) Defendants retain a Florida-based website designer. [D.E. 1 at ¶ 17]. The record shows otherwise.

#### *1. Florida's Long-Arm Statute*

Florida courts exercise specific personal jurisdiction if a defendant submits by

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state. 2. Committing a tortious act within this state. 3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state. 4. Contracting to insure a person, property, or risk located within this state at the time of contracting. . . . 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . . . 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a)(1)–(4), (6), (7).

First, a defendant is carrying business in a forum state when "[t]he activities of the person sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Dinsmore v. Martin Blumenthal Associates, Inc.*, 314 So. 2d 561, 564 (Fla. 1975).

Here, although Defendants retained a Florida company to design their websites, that isolated contractual relationship is not sufficient because Defendants do not maintain brokers, jobbers, wholesalers, distributors, or other commercial

representatives to market or promote their own services in Florida. [D.E. 1 at ¶ 17]; *Dinsmore*, 314 So. 2d at 564 (finding that the defendant was not carrying on a business venture in Florida where its only Florida contact was giving a listing to a Florida brokerage firm). Defendants maintain their sole places of business in Minnesota, have no offices or real property there, are not licensed to conduct business in Florida, and serve customers exclusively in Minnesota, showing that Defendants do not do general business in Florida. [D.E. 20-1 at ¶¶ 2–4, 7–10]; [D.E. 20-2 at ¶¶ 2–4, 7–10]; [D.E. 22-1 at ¶¶ 3–6]; *see, e.g., Sculptchair*, 94 F.3d at 628 (concluding that neither the individual defendants nor the corporation were engaging in business activities in Florida where they maintained no offices or agents in the state, did not manufacture, sell, lease, or solicit orders there, the individuals' contacts were limited to isolated telephone calls and brief meetings).

Alternatively, Florida courts adopt the same factors for this analysis as the factors for determining Fla. Stat. § 48.193(2).[1] *See Carmel & Co v. Silverfish, LLC*, No. 1:12-CV-21328-KMM, 2013 WL 1177857, at *3 (S.D. Fla. Mar. 21, 2013) (citing *Horizon Aggressive Growth*, 421 F.3d at 1167). As analyzed above, Defendants do not satisfy these four factors to show its general course of activity in Florida, and the visibility of the websites in Florida is not enough. *Jackson-Bear Group, Inc. v.*

[1] In deciding whether a defendant conducts business in Florida, relevant factors include "the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Day*, 818 F. Supp. 3d at 1403 (cleaned up) (citing *Horizon Aggressive Growth*, 421 F.3d at 1167); *see supra* p. 4.

*Amirjazil*, No. 2:10-CV-332-FTM-29, 2011 WL 1232985, at *4 (M.D. Fla. Mar. 30, 2011) (finding that the defendants were not conducting business in Florida because their website alone was insufficient, as they maintained no offices, property, or licenses in Florida, derived no revenue from Florida clients, and sending cease-and-desist letters alone did not suffice). Thus, § 48.193(1)(a)(1) is not met.

Second, courts can impose specific personal jurisdiction over a nonresident defendant who commits a tort that causes injury in the state, even if the defendant committed the tortious act elsewhere. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (adopting broad interpretation of Florida's long-arm statute that allows to impose personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida). A tortious act "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida" so long as "the cause of action . . . arise[s] from the communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). For website purposes, the Florida Supreme Court requires the material being posted on a website must not only be accessible in Florida but also actually accessed in Florida. Only then can the material constitute the commission of a tort. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010).

Here, although Defendants' websites receive world-wide accessibility, [D.E. 23 at ¶ 20], Plaintiff conceded that he only accessed them when he resided in Minnesota, not Florida, [D.E. 41 at ¶ 3]. So the record shows that he never actually accessed the material in the state, thereby negating any tort being committed in the state for

specific jurisdiction purposes. *See, e.g., Day*, 818 F. Supp. 3d at 1406 (granting dismissal and finding Fla. Stat. § 48.193(1)(a)(2) not satisfied. when the plaintiff alleged no one actually accessed 4New's website in Florida). Thus, § 48.193(1)(a)(2) is not met.

Third, Plaintiff has presented no evidence that Defendants own, mortgage, or hold a lien on any real property in Florida, and Defendants have testified that they own no property in the state. [D.E. 20-1 at ¶ 10]; [D.E. 20-2 at ¶ 10]; [D.E. 22-1 at ¶ 5]. Thus, § 48.193(1)(a)(3) is not met.

Fourth, the record contains no evidence that Defendants contracted to insure or indemnify a person, property, or risk within Florida. [D.E. 1]; [D.E. 23]. Thus, § 48.193(1)(a)(4) is not met.

Next, § 48.193(1)(a)(6) confers specific personal jurisdiction only where a defendant causes injury to persons or property in Florida arising from an act or omission outside the state and, at or about the time of the injury, either (a) "was engaged in solicitation or service activities within this state," or (b) "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)(6)(a)–(b). Here, Plaintiff has failed to establish either statutory prerequisite. The record shows neither that Defendants solicit business in Florida at or about the time of the alleged injury, nor their products, materials, or services are used or consumed in Florida. [D.E. 1]; [D.E. 23]. Thus, § 48.193(1)(a)(6) is not met.

Finally, Plaintiff has not alleged, much less established, that Defendants breached a contract in Florida by failing to act in this state as required. Accordingly, § 48.193(1)(a)(7) provides no basis for the exercise of specific personal jurisdiction. Therefore, we conclude that Florida's long-arm statute does not authorize the exercise of specific personal jurisdiction over Defendants.

### ***2. Due Process***

Even if Plaintiff establishes a statutory basis for specific personal jurisdiction under Florida's long-arm statute, the exercise of jurisdiction would nevertheless be improper because it would not satisfy the constitutional requirements of due process. So we continue our analysis for completeness.

Courts must determine whether the defendant has sufficient minimum contact with the forum state so not to offend traditional notions of fair play and substantial justice under due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The Eleventh Circuit has adopted a three-part test by examining whether "(1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (citing *Louis Vuitton*, 736 F.3d at 1355). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a

defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

First, for "arising out of" or relatedness, the inquiry does not require direct causation; instead, the prong rests on "whether there is a sufficiently strong 'relationship among the defendant, the forum, and the litigation.'" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 353 (2021)). Plaintiff alleges that Defendants' websites violate the ADA because they are inaccessible to visually impaired users. [D.E. 1 at ¶ 26]. Defendants' retention of a Florida company to design those websites therefore bears a sufficient relationship to the claims and the forum state. Thus, the first prong is satisfied.

Second, there must have been "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," thereby establishing sufficient minimum contact. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen*, 444 U.S. at 295 (holding that there was no specific personal jurisdiction because the defendants neither served nor targeted the Oklahoma market or residents, and the mere foreseeability that products might enter Oklahoma was insufficient to establish the minimum contacts required by due process); *Int'l Shoe Co.*, 326 U.S. at 313–14 (finding International Shoe Company had established

sufficient minimum contact with Washington because it employed 11 to 13 salesmen who regularly solicited orders, displayed company samples to prospective customers and occasionally rented sample rooms for sales activities in the state).

The purposeful availment standard ensures that a defendant will not be haled into a court based on "attenuated" contacts. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citing *Burger King*, 471 U.S., at 475). The inquiry focuses on the defendant's own purposeful acts directed toward the forum state, not on the mere likelihood or foreseeability of contacts resulting from the actions of a third party. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990).

Under the minimum-contacts analysis, Defendants' contract with a Florida-based website design company—even though the company designed, printed, and shipped marketing materials for use in Minnesota—is insufficient to establish purposeful availment. [D.E. 20 at 7]. The mere existence of a contract with a forum resident does not, by itself, establish the minimum contacts required by the Due Process Clause. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1056–63 (11th Cir. 1986) (holding that the Georgia buyer did not purposefully avail itself into Missouri because the buyer negotiated and executed the purchase contract with a Missouri seller in Georgia, did not travel to Missouri to negotiate or inspect the seller's manufacturing facility, did not supervise or participate in the seller's manufacture of the goods in Missouri, and its only Missouri contacts—the seller's production of the goods and the buyer's post-breach return of nonconforming goods—were insufficient); *Owen of Georgia, Inc. v. Blitman*, 462 F.2d 603, 604 (5th

Cir. 1972) (finding no purposeful availment because the defendant's only connection to the forum was a single, isolated purchase contract with the plaintiff, absent an agency relationship, even though the goods were manufactured in the forum state). Neither the websites' visibility by Florida residents would suffice as purposeful availment. *Louis Vuitton*, 736 F.3d at 1357 ("We are not saying that the mere operation of an interactive website alone gives rise to purposeful availment anywhere the website can be accessed."); *Vital Pharm., Inc. v. Bang Diamonds LL*C, No. 22-CV-60155, 2022 WL 3867894, at *6 (S.D. Fla. Aug. 30, 2022) (denying the defendant's contact with Florida through its website was insufficient given that it advertised to ship within 48 states without any indication specifically targeting at Florida consumers).

Moreover, under the effect test, purposeful availment can be supported by even a single act targeting at an individual, occurring when the contact with the forum state is intentional, aimed at it, and caused harm that the defendant should anticipate. *Del Valle*, 56 F.4th at 1276. But nothing in Plaintiff's evidence proves that Defendants' websites are designed to target Florida residents. *See ibid*. (holding that the defendants—the Booking and Expedia Entities—purposefully availed themselves in Florida when they promoted their websites directed at Florida residents and sent follow-up emails to Florida residents who searched on their websites); *cf. Moore v. Cecil*, 109 F.4th 1352, 1363–64 (11th Cir. 2024) (holding that there was no purposeful availment because the defendant's tweets did not specifically target Alabama and did

not even name the plaintiff directly). Therefore, neither test can establish purposeful availment.

Third, even assuming Plaintiff could establish purposeful availment, he still fails to show specific personal jurisdiction because he cannot satisfy the third prong. For fair play and substantial justice, the court must consider "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288 (citation omitted).

We agree with Defendants that there would be a serious burden on them given that they are in Minnesota with no presence in Florida; Florida has minimal interest in resolving a dispute between parties all from Minnesota, especially when Plaintiff did not even get access to the websites in Florida; Plaintiff likely has strong interest in obtaining relief; and the dispute should be resolved in Minnesota to achieve efficiency because all Defendants and potential evidence are located there. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 114–15 (1987) (finding that exercising jurisdiction over Asahi would be unreasonable because the burden on the Japanese company was substantial; the plaintiff's interest in litigating in California was minimal; California had little remaining interest in a dispute between foreign corporations; California was not an efficient forum for resolving an indemnity claim arising from transactions in Asia; and important international comity and foreign-relations concerns counseled against extending specific personal jurisdiction). By weighing all factors, exercising specific personal

jurisdiction over Defendants would offend traditional sense fair play and substantial justice. Therefore, we cannot exercise specific personal jurisdiction over Defendants. Accordingly, this case must be dismissed for lack of personal jurisdiction.

## *III. ANALYSIS FOR IMPROPER VENUE*

### *A. Standard of Review*

Rule 12(b)(3) permits a party to move to dismiss an action for improper venue. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). 28 U.S.C. § 1406(a) provides that when a case is filed in the wrong district or division, the district court must either dismiss the action or, if it is in the interest of justice, transfer it to a district or division where the action could have been brought. *Id*. Thus, dismissal under these provisions is appropriate only when venue is improper in the forum where the action was filed, and whether venue is proper is generally governed by 28 U.S.C. § 1391. *Id*. Under § 1391(b), a civil action can be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

### *B. Venue Does Not Lie in This District*

For venue purposes, §1391(c)(2) provides that a defendant entity resides in any judicial district where it is subject to personal jurisdiction for the action at issue. Here, all Defendants are incorporated and headquartered in Minnesota without having any

registered license, office, businesses, employees or bank accounts in Florida. [D.E. 20-1 at ¶¶ 2–10]; [D.E. 20-2 at ¶¶ 2–10]; [D.E. 22-1 at ¶¶ 3–6]. So they reside in Minnesota. Also, as analyzed above, we cannot exercise personal jurisdiction over Defendants in Florida, making them not reside in any judicial district in the state. Even assuming Plaintiff could establish personal jurisdiction based on Defendants' one-time engagement of DreamBig that is located in Sarasota, Florida, the contact only occurred in the Middle District of Florida. Under 28 U.S.C. § 1391(d), in a state with multiple judicial districts, a corporate defendant is deemed to reside only in those districts where its contacts would support personal jurisdiction if each district were treated as a separate state. Plaintiff identifies no comparable contacts with the Southern District of Florida. Accordingly, Defendants would not be deemed to reside in this district for purposes of § 1391(b)(1), and thus venue is not proper under this provision.

Plaintiff states that venue is proper under §1391(b)(2) because "a substantial part of the acts and omissions" giving rise to his claims happened in our district. [D.E. 1 at ¶ 18]. We disagree. Plaintiff alleges that he was injured when he was denied full access to Defendants' websites from Minnesota, and there was no transaction, interaction, or injury occurred in Florida. [*Id.*]; [D.E. 41 at ¶ 3]. Thus, a substantial part of the material events actually happened in Minnesota, not Florida, making venue improper under this provision as well. *See, e.g., Silver v. Karp*, No. 14-80447-CIV, 2014 WL 4248227, at *4 (S.D. Fla. Aug. 27, 2014) ("[T]he Complaint contains no well-pleaded allegations tying Defendants' conduct to the Southern District of Florida.

Instead, Mr. Karp's affidavits suggest that any alleged tortious conduct occurred in or around Lawrence, New York, where Mr. Karp and the BKLS Partnership do business, and that any property at issue is located there.").

Venue may be established under § 1391(b)(3) only where neither § 1391(b)(1) nor (2) provides a basis. *Algodonera De Las Cabezas, S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005) (citing *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996)). Here, given all Defendants are Minnesota residents and the alleged injury occurred there as well, the venue would be appropriate there. Thus, this provision does not apply at all. *Silver*, 2014 WL 4248227 at *4 (finding that because the Eastern District of New York is an available and proper venue under § 1391(b)(2), making § 1391(b)(3) inapplicable). Accordingly, this case should also be dismissed for improper venue.

## *IV. CONCLUSION*

For the foregoing reasons, Defendants' Motions to Dismiss and for Improper Venue are **GRANTED**. Plaintiff has failed to prove that the Court can exercise personal jurisdiction over Defendants and failed to establish that the venue is proper in the Southern District of Florida. The case is hereby **DISMISSED WITHOUT PREJUDICE** with respect to all claims brought by Plaintiff against the Defendant. The Order precludes the exercise of jurisdiction in this District but does not preclude the filing of a timely action in a proper venue or jurisdiction This case is now **CLOSED**.

**DONE and ORDERED** in Chambers at Miami, Florida this 30th day of September, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge